AUSA: John Sarlitto

**2 5 MAG 2 7 8 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JAMAIRE ROBERTSON,

Defendant.

**COMPLAINT**

Violations of 18 U.S.C. §§ 924(c)(1)(A); 1951.

COUNTY OF OFFENSE:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

PHILIPPE GOULET, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1. On or about August 29, 2025, in the Southern District of New York and elsewhere, JAMAIRE ROBERTSON, the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, ROBERTSON conspired with others to rob at gunpoint a gas station in the vicinity of Mount Vernon Avenue in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

## COUNT TWO
### (Hobbs Act Robbery)

2. On or about August 29, 2025, in the Southern District of New York and elsewhere, JAMAIRE ROBERTSON, the defendant, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and aided and abetted the same, to wit, ROBERTSON robbed at gunpoint a gas station in the vicinity of Mount Vernon Avenue in Mount Vernon, New York.

(Title 18, United States Code, Sections 1951 and 2.)

## COUNT THREE
### (Possession of a Firearm During and in Relation to a Crime of Violence)

3. On or about August 29, 2025, in the Southern District of New York and elsewhere, JAMAIRE ROBERTSON, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count Two of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, which was brandished and discharged.

(Title 18, United States Code, Section 924(c)(1)(A)(i), (ii), and (iii).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since approximately 2017. For approximately five years, I was assigned to a healthcare fraud squad in the FBI's New York, New York Field Office. In that capacity, I investigated businesses and individuals for their participation in healthcare fraud. For approximately three years, I have been assigned to the Westchester Safe Streets Task Force. On the Westchester Safe Streets Task Force, I investigate sex trafficking and human trafficking offenses, narcotics offenses, violence, firearms offenses, and racketeering enterprises.

5. I have been personally involved in the investigation of this matter. This affidavit is based in part upon my training and experience, my conversations with other law enforcement officers and others, and my examination of correspondence, reports, video footage, audio recordings, and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts I have learned during my investigation. Where the contents of documents or recordings and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise noted.

### ROBERTSON ROBS A GAS STATION AT GUN POINT AND DISCHARGES A FIREARM AT POLICE WHILE IN FLIGHT

6. Based upon my discussions with law enforcement officers, including officers with the City of Mount Vernon Police Department ("MVPD") and the New York City Police Department ("NYPD"), my examination of reports and records, my review of video surveillance footage, and my participation in this investigation, I have learned, among other things, the following, in substance and part:

   a. On or about August 29, 2025, law enforcement officers were alerted to an armed robbery of a gas station located in the vicinity of 30 Mount Vernon Avenue in Mount Vernon, New York (the "Gas Station") that occurred at approximately 5:29AM that day.

   b. Police officers responding to the scene encountered a clerk ("Victim-1"), who had been working at the Gas Station at the time of the robbery. Victim-1 recounted to officers, in substance and in part, that two individuals ("Suspect-1," later identified as JAMAIRE ROBERTSON, the defendant, and "Suspect-2") (collectively, "the Suspects") approached him, each brandishing a firearm. The Suspects pushed Victim-1 against a wall and demanded money,

taking all the cash on Victim-1's person (approximately $500-600 dollars) as well as Victim-1's wallet.

        c.     Security camera footage at the Gas Station, which was reviewed by law enforcement, captured the Suspects' approach to the Gas Station, each brandishing a firearm. Suspect-1 was wearing a black hoodie and black pants and Suspect-2 was wearing a white hoodie and dark shorts. A still photograph from that footage is below:



        d.     Approximately two minutes after the Suspects arrived at the Gas Station, security camera footage collected and reviewed by law enforcement captured the Suspects departing the Gas Station and fleeing south along South Bond Street in Mount Vernon. Security camera footage reviewed by law enforcement reflected that the Suspects separated after crossing a bridge along South 14th Avenue, and that Suspect-1, later identified as JAMAIRE ROBERTSON, the defendant, proceeded southwest along Pearl Street in Mount Vernon.

        e.     Approximately several minutes later, NYPD officers assigned to the Bronx, New York, who were in the vicinity of Pearl Street and were aware of the armed robbery at the Gas Station, observed Suspect-1 running down Pearl Street. The NYPD officers exited their vehicle and began searching for Suspect-1 in the vicinity of a residence at or near 29 Pearl Street. At approximately 5:42AM, Suspect-1 discharged his firearm at the NYPD officers, who returned fire in turn. Officers observed Suspect-1 fleeing toward the back of the residential property at or near 29 Pearl Street. In a post-encounter canvas of the property, law enforcement officers recovered a firearm. A photograph of the recovered firearm is below. Law enforcement officers also recovered a black sweatshirt in the vicinity of train tracks located behind the residence at or near 29 Pearl Street, in the direction Suspect-1 had been observed to flee.

4



7.      Following the robbery of the Gas Station, law enforcement officers canvassed for, received, and reviewed video surveillance footage from the vicinity of the Gas Station. Based upon my discussions with law enforcement officers, including officers with the City of Mount Vernon Police Department ("MVPD") and the New York Police Department ("NYPD"), my examination of reports and records, my review of video surveillance footage, and my participation in this investigation, I have learned, among other things, the following, in substance and part:

a. In video surveillance footage from approximately 5:10AM on or about August 29, 2025, law enforcement officers identified Suspect-1 exit a black BMW sedan and enter 707 East 242nd Street, a multifamily apartment building, in the Bronx, New York (the "East 242nd Street Address"). Based on a search of the sedan's vehicle identification number ("VIN") in law enforcement records, the vehicle was found to be registered to JAMAIRE ROBERTSON, the defendant.

b. Approximately several minutes later, as reflected in video surveillance footage reviewed by law enforcement, Suspect-1 exited the East 242nd Street Address and returned to the black BMW sedan dressed in a black hoodie and black pants, at which point Suspect-2 exited the vehicle.

c. Additional video surveillance footage from between approximately 5:19AM and 5:29AM, which was reviewed by law enforcement, documents Suspect-1 and Suspect-2 proceeding together on foot to the Gas Station.

d. At approximately 6:25AM on or about August 29, 2025, a time approximately 56 minutes after the robbery of the Gas Station and approximately 43 minutes after Suspect-1 discharged his firearm at NYPD officers, security camera footage from the East 242nd Street Address shows ROBERTSON returning to the apartment building clad only in a t-shirt and underwear. An excerpt from this footage is below:



  e. At approximately 11:54AM on or about August 29, 2025, security camera footage from the East 242nd Street Address shows ROBERTSON shoving items into a black plastic bag, which he then discards in the trash chute. Law enforcement retrieved this black plastic bag and recovered from it a blue shirt consistent with the t-shirt worn by ROBERTSON in the footage excerpted above, along with a white shirt.

  f. At approximately 3:17PM, ROBERTSON exited the East 242nd Street Address and, while he was returning to the East 242nd Street Address, was arrested by law enforcement.

## ROBERTSON'S POST-ARREST STATEMENTS

  8. Based upon my discussions with law enforcement officers, my examination of reports and records, my review of video surveillance footage, and my participation in this investigation, I have learned, among other things, in substance and part, that, after being Mirandized, JAMAIRE ROBERTSON, the defendant, participated in a voluntary interview with members of law enforcement, during which:

  a. after initially denying involvement in the aforementioned robbery, ROBERTSON confirmed to law enforcement, in substance and in part, that he was present at the robbery of the Gas Station. Robertson asserted to law enforcement that he was induced to participate in the armed robbery after being "threatened" by Suspect-2, whom ROBERTSON claimed not to know, together with other associates of Suspect-2 also unknown to ROBERTSON.

  b. ROBERTSON confirmed his appearance in surveillance images shown to him by law enforcement from the period before and after the robbery in locations proximate to the Gas Station, including the image below showing ROBERTSON (at right) and Suspect-2 (at left) walking together in front of the East 242nd Street Address in the direction of the Gas Station at approximately 5:19AM.



        c.      ROBERTSON told law enforcement, in substance and in part, that Suspect-2 provided him a firearm prior to the robbery of the Gas Station, that ROBERTSON possessed this firearm during the robbery, and that Suspect-2 instructed ROBERTSON "that when we approach the guy, I should point it."

        d.      ROBERTSON told law enforcement, in substance and in part, that the firearm in his possession discharged accidentally when he discarded it on the ground after being approached by NYPD officers in the vicinity of 29 Pearl Street in Mount Vernon.

WHEREFORE, I respectfully request that JAMAIRE ROBERTSON, the defendant, be arrested, and imprisoned or bailed, as the case may be.

/s/ Philippe Goulet (signed by VR with permission)
PHILIPPE GOULET
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to me through the transmission of
this Complaint by reliable electronic
means (Microsoft Teams), this 30th day of August, 2025.

THE HONORABLE VICTORIA REZNIK
United States Magistrate Judge
Southern District of New York

7